UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-30135-KPN

| | |
|---|---|
| STACEY QUINONES,<br>    Plaintiff | )<br>)<br>) |
| vs. | )<br>) |
| TOWN OF HOLLAND, HOLLAND POLICE<br>DEPARTMENT, CHIEF KEVIN GLEASON,<br>RAY MOREHOUSE AND EARL JOHNSON,<br>    Defendants | )<br>)<br>)<br>) |

**DEFENDANTS' MOTION FOR ENTRY OF PRIVACY ORDER**

The Defendants hereby move that the Court enter a Privacy Order in the form attached hereto as Exhibit A in order to permit the disclosure of certain FBI file materials which are relevant to this case. In support of this Motion, the Defendants state as follows:

The Plaintiff alleges in her Complaint that she was employed by the Town of Holland as a Reserve Police Officer and Community Liaison in its Police Department beginning in December, 2003. She also claims that during the course of her employment and following the termination of her employment on June 24, 2004, the Defendant, Town of Holland Police Department, and Defendant, Police Chief Kevin Gleason, deprived her of her constitutional rights in violation of 42 U.S.C. §1983. She also alleges that she was the victim of sexual harassment, retaliation, and gender discrimination, and that Chief Gleason and Defendant, Police Officer Ray Morehouse, interfered with her civil rights in violation of Massachusetts law.

At her deposition, the Plaintiff testified that in or about February, 2004, she contacted Special Agent William Whittrock at the FBI's office in Springfield, Massachusetts, to give the FBI information that she had concerning certain illegal and improper activities that had allegedly

468899

occurred within the Holland Police Department. She testified that during subsequent meetings with Agent Whittrock, she authorized the FBI to tap her telephone and also have her wear a wire to record a meeting she was going to be attending with Chief Gleason and Officer Morehouse regarding matters relevant to this case. The Plaintiff subsequently provided Agent Whittrock with a tape recording of the meeting, and another tape recording made at a Town Selectmen Meeting. She also provided additional materials to Agent Whittrock including chronological notes that she had taken as well as various documents given to her at the Police Department.

If the Plaintiff's testimony is to be believed, the FBI has in its files materials and information which are directly relevant to the claims brought by Ms. Quinones against the Defendants. This material includes at a minimum the tape recording of the alleged meeting that Ms. Quinones attended with Chief Gleason and Officer Morehouse during which she was wearing a wire, and tape recordings made from the Plaintiff's telephone, including conversations between her and members of the Police Department, as well as witness statements and interviews obtained by Agent Whittrock and other FBI employees. The file should also contain chronological notes prepared by the Plaintiff, documents and other materials she provided to Agent Whittrock, and notes prepared by Agent Whittrock and other FBI employees during their various meetings and conversations with the Plaintiff.

On January 12, 2007, the Defendants served a subpoena duces tecum on the custodian of records for the FBI office in Springfield seeking production of all FBI file material relating to this matter. The Defendants accompanied the subpoena with a written demand for FBI file material pursuant to 48 C.F.R. §16.21 et seq. which was directed to Frank Davis, Esquire, Chief Division Counsel for the FBI at its Boston office. (A copy of the written demand, with Exhibits A and C, is attached hereto as Exhibit 1).

468899

On January 24, 2007, undersigned counsel was contacted by United States Attorney Karen Goodwin and told that the FBI would agree to turn over some of the requested materials in its files provided that this Court entered an order finding that the Defendants' need for disclosure of this information outweighs the privacy needs of the persons to whom the information pertains under the Privacy Act (5 U.S.C. §552a). Undersigned counsel has since received correspondence from Attorney Goodwin reiterating the same (see correspondence dated January 12, 2007 [received February 13, 2007], attached as Exhibit 2).

The individuals to whom the FBI file information pertains are the same Defendants who are making the request for its disclosure in order that they can adequately defend themselves against the Plaintiff's claims. Under these circumstances, it is clear that the Defendants' need for disclosure of the FBI file information sought outweighs the privacy needs of the persons to whom the information pertains.

WHEREFORE, the Defendants respectfully urge that the court enter an order in the form attached hereto as Exhibit 3 to allow a portion of the documents called for in the subpoena duces tecum to be produced by the deponent.

THE DEFENDANTS
TOWN OF HOLLAND, et al.


By___/s/ Patricia M. Rapinchuk_____
Patricia M. Rapinchuk, Esq., of
Robinson Donovan, P.C.
1500 Main Street, Suite 1600
Springfield, Massachusetts 01115
Phone (413) 732-2301  Fax (413) 785-4658
BBO No.: 556149
prapinchuk@robinson-donovan.com

468899

CERTIFICATE OF SERVICE

I, Patricia M. Rapinchuk, Esq., hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on February 16, 2007.

                                                  ___*/s/ Patricia M. Rapinchuk*_____
                                                  Patricia M. Rapinchuk, Esquire

468899



EXHIBIT /

Patricia M. Rapinchuk, Esq.                                          prapinchuk@robinson-donovan.com

January 12, 2007

Frank Davis, Esq.
Chief Division Counsel
Federal Bureau of Investigation
One Center Plaza, Suite 600
Boston, MA  02108

    RE:    <u>Demand for F.B.I. file material pursuant to 48 C.F.R. §16.21 et seq.</u>

            Subpoena Duces Tecum in *Stacey Quinones v. Town of Holland, et al,*
            U.S. District Court for the District of Massachusetts -
            Docket No.:  05-CV-30135-MAP

Dear Mr. Davis:

    I am the attorney representing the defendants in the above civil action which is currently pending in the United States District Court for the District of Massachusetts, Western Division. I have attached hereto a Subpoena Duces Tecum on behalf of my clients, the Town of Holland (Massachusetts) Police Department, Chief Kevin Gleason and Officer Ray Morehouse (Exhibit A, attached) seeking material and information relating to any investigations of the department or these individuals. I understand that you have agreed to accept service of this subpoena on behalf of the F.B.I.

    The specific materials and information sought are set forth in the body of the subpoena. They are necessary and relevant to this civil proceeding for the following reasons:

    This civil action was originally brought by the plaintiff, Stacey Quinones, by filing a Complaint and Demand for Jury Trial in the United States District Court of the District of Massachusetts on or about June 7, 2005. (See Exhibit B attached.) In her complaint, Ms. Quinones alleges that she was employed by the Town of Holland as a reserve police officer and community liaison in its police department beginning in December 2003. She claims that during the course of her employment and following the termination of her employment on June 24,

ROBINSON DONOVAN, P.C.
MAIN OFFICE: 1500 Main Street, Suite 1600 • Post Office Box 15609 • Springfield, MA 01115-5609 • 413-732-2301 • Fax: 413-785-4658
Northampton Office: 16 Armory Street • Northampton, MA 01060 • 413-587-9853
www.robinson-donovan.com

January 12, 2007
Page 2

2004, the Holland Police Department and Chief Gleason deprived her of her constitutional rights to political affiliation, free speech, petitioning activity, and other rights in violation of 42 U.S.C. §1983. Ms. Quinones alleges that she was also the victim of sexual harassment, retaliation and gender discrimination in violation of M.G.L. c.151 (b). Furthermore, Ms. Quinones claims that Chief Gleason and Officer Morehouse interfered with her civil rights through threats, intimidation and coercion in violation of M.G.L. c. 12 s.11I.

A deposition of Ms. Quinones was taken on August 29, 2006. (Relevant excerpts of Ms. Quinones' deposition are attached hereto as Exhibit C). During the course of that deposition, Ms. Quinones testified that in or about February of 2004, she contacted Special Agent William Whittrock, at the F.B.I.'s office in Springfield, Massachusetts (pp. 226-227). Quinones testified that she contacted the F.B.I. to give them information that she had concerning certain illegal and improper activities that had occurred within the Holland Police Department. Ms. Quinones testified that she shared with Agent Whittrock that she had knowledge of financial improprieties, sexual harassment, and retaliatory conduct (pp. 229-233).

Ms. Quinones testified that she had three or four meetings with Agent Whittrock, including several at the F.B.I. office in Springfield and two meetings at a Friendly's restaurant in Sturbridge, Massachusetts (pp. 233-235). She testified that during the first meeting at Friendly's, she signed some forms authorizing the F.B.I. to tap her telephone and have her wear a wire (pp. 238-240). Ms. Quinones had previously discussed with Agent Whittrock that she was going to be attending a meeting with Chief Gleason and Officer Morehouse. Agent Whittrock then provided her with the wire in order that she could record the meeting. Ms. Quinones testified that she attended the meeting while wearing the wire. During the meeting she and Chief Gleason had discussions in which he allegedly made certain statements supporting certain of her allegations in the civil suit (pp. 243-253). Ms. Quinones also testified that she later returned the wire or recording device to Agent Whittrock (p. 242). She does not have any tape recording of the meeting or any transcripts made from the tape recordings obtained through the use of the wire, nor has she ever listened to any recordings (p. 254).

Ms. Quinones also testified that she was told by Agent Whittrock after she handed him back the recording device at Friendly's that day that he was going to follow up and continue the investigation. She testified that she later heard from Agent Whittrock that a transcription had been made from the recording of the meeting. (p. 255) Ms. Quinones testified that she talked to Mr. Whittrock by telephone for "dozens of times" after the Friendly's meeting. (255) She testified that she believes she lost contact with Agent Whittrock sometime in 2005 (256). About that time, she brought Agent Whittlock a tape made at a town selectmen's meeting (256-257). Ms. Quinones also testified that she provided additional materials to Agent Whittrock including chronological notes that she had taken, as well as various documents given to her at the police department, newspaper articles and other materials (237-238).

If Ms. Quinones' testimony is to be believed, the F.B.I. has in its files, materials and information which are directly relevant to the claims brought by Ms. Quinones against my clients and their defenses to those claims. This material includes, at a minimum, the tape recording of the alleged meeting Ms. Quinones attended with Chief Gleason and Officer Morehouse during which she was wearing a wire, or a transcript of that recording, the tape recording of the

468079

January 12, 2007
Page 3

Selectmen's meeting, tape recordings made from Ms. Quinones' phone, including conversations between her and members of the police department, and witness statements and interviews obtained by Agent Whittrock and other FBI employees. The file would also contain the chronological notes which were prepared by Ms. Quinones, documents and other materials she provided to Agent Whittrock, and notes prepared by Agent Whittrock and other FBI employees during their various meetings and conversations with Ms. Quinones.

    If this information and material is not produced, Chief Gleason and Officer Morehouse will be unable to verify any of Ms. Quinones' testimony concerning her contacts with the F.B.I. and will be deprived of evidence which is critical in defending themselves against Ms. Quinones' various claims and which is otherwise unavailable.

    I understand that you will be forwarding this demand for F.B.I. file material pursuant to 48 C.F.R. §16.21 et seq. to the United States Attorney for further review. If either the F.B.I. or the U.S. Attorney's office requires any further information in order to respond to this demand, please let me know immediately so that I may furnish whatever other additional information is required.

Very truly yours,

Patricia M. Rapinchuk

PMR/rjr
Enclosures
cc: Lisa Brodeur-McGan, Esq.

468079

**UNITED STATES DISTRICT COURT**
DISTRICT OF MASSACHUSETTS

EXHIBIT 1A

SUBPOENA IN A CIVIL CASE

CIVIL ACTION NO.: 05-30135-MAP

STACEY QUINONES,  )
    Plaintiff )
vs. )
  )
TOWN OF HOLLAND, HOLLAND POLICE )
DEPARTMENT, CHIEF KEVIN GLEASON, )
RAY MOREHOUSE AND EARL JOHNSON, )
    Defendants )

TO:   Custodian of Records
    Federal Bureau of Investigation
    Springfield Office
    155 Brookdale Drive
    Springfield, MA 01104

C/o Frank Davis, Esq.
    Chief Division Counsel
    Federal Bureau of Investigation
    One Center Plaza, Suite 600
    Boston, MA 02108

☐ **YOU ARE COMMANDED** to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  |  |
|  | DATE AND TIME |

☐ **YOU ARE COMMANDED** to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  |  |

467651

| X | YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects): |

1. a complete copy of any FBI Files relating to any investigations of the town of Holland, Massachusetts Police Department, Chief of Police Kevin Gleason or Officer Ray Morehouse.
2. copies of any and all audio recordings (or transcripts made there from) of any meetings or telephone conversations which were obtained in the course of such investigations.
3. any and all witness statements or interviews obtained in the course of such investigations including statements and interviews with the following: Stacy Quinones, Kevin Gleason, Ray Morehouse, other individuals from the Holland Police Department.

| PLACE | DATE AND TIME |
|---|---|
| Robinson Donovan, P.C.<br>1500 Main Street, Suite 1600<br>Springfield, MA 01115 | Monday, January 29, 2007<br>at 10:00 a.m. |

THE DEPONENT WAS ADVISED THAT IT MAY COMPLY WITH THIS SUBPOENA BY FAXING OR MAILING A COPY OF THE REQUESTED DOCUMENTS TO PATRICIA M. RAPINCHUK, ESQ., ROBINSON DONOVAN, P.C., 1500 MAIN STREET, SUITE 1600, SPRINGFIELD, MA 01115 ON OR BEFORE <u>JANUARY 29, 2007.</u>

| ☐ | YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below. |

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit is subpoenaed for taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| *Patricia M. Rapinchuk* <br> Patricia M. Rapinchuk, Esq. – Attorney for Defendants | 1/12/07 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Robinson Donovan, P.C.
1500 Main Street - Suite 1600
Springfield, MA 01115
Tel. (413) 732-2301

(See Rule 45, Federal Rules of Civil Procedures, Parts C & D on Reverse)

## PROOF OF SERVICE

| SERVED | DATE | PLACE |
|---|---|---|
| | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

467651

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the forgoing information contained in the Proof of Service is true and correct.

Executed on _____          _____
                     Date                                                    Signature of Server

                                                                    _____
                                                                    Address of Server

                                                                    _____

467651

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents, or tangible things, of inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expenses resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it
    (i) fails to allow reasonable time for compliance;
    (ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trail is held, or
(iii) requires disclosure of privileged or other protected material and no exception or waiver applies, or
    (iv) subjects a person to undue burden.

(B) If a Subpoena

    (i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or
    (ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrence in dispute and resulting from the expert's study made not at the request of any party, or
(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

467651

```
 1  conversation with Sergeant Hope after that
 2  meeting with him?
 3       A.   Not that I recall.
 4       Q.   So I'm trying to keep track of
 5  everybody's names.  We have Swift.  We have
 6  Hope.  We have the ATF agent, whose name you
 7  don't know, right?
 8       A.   But I have his business card,
 9  actually.
10       Q.   Okay.  We have Smith and one of the
11  professors.  And then after you left, you have
12  Hackett.  And actually, Swift came after you
13  left as well, right -- no, I'm confused.
14       A.   I think so.  I think Swift was
15  afterwards.
16       Q.   Did you speak with anybody else
17  about these issues?
18       A.   Yes.
19       Q.   Who?
20       A.   The FBI.
21       Q.   Who?
22       A.   Agent Wittrock.
23       Q.   And who put you in touch with Agent
24  Wittrock?
```

EXHIBIT 1C

1	A.	Yes.
2	Q.	Did you tell either CPAC or ATF you
3 were going to go to the FBI?
4	A.	I told no one my intentions, no.
5	Q.	Tell me what happened with the FBI.
6	A.	I basically gave them the
7 information that I had of some issues that
8 concerned me.
9	Q.	Are there any issues that concerned
10 you that you haven't told me about already?
11	A.	What I believe to be a misuse of
12 funds.
13	Q.	What is that?
14	A.	On the part of spending on Kevin
15 from the police department money.
16	Q.	What in particular?
17	A.	Things he was buying with police
18 money that -- you know, personal apparel for
19 himself, things personally that he wanted.
20	Q.	What were you aware of that he had
21 purchased with police department funds?
22	A.	Personal clothing gear for himself.
23	Q.	What?
24	A.	Just like stuff for his SWAT team,

1  dealt with at the FBI?
2      A.   The first time I spoke with him, he
3  had another agent with him, but I don't recall
4  his name.  But Agent Wittrock was the one
5  handling it.
6      Q.   Was this an in-person meeting?
7      A.   Yes.
8      Q.   Where did you have this meeting?
9      A.   My house.
10     Q.   So they came to you?
11     A.   Yes.
12     Q.   One of the reasons I asked you
13 about the multiple meetings is because you
14 mentioned that you had told them about your
15 running for the Select Board and things that
16 occurred after February of 2004.  Were those
17 things that you told him about in later
18 meetings?
19     A.   Probably on phone calls.
20     Q.   How many actual meetings did you
21 have?
22     A.   Probably about three or four.
23     Q.   And you also had phone calls?
24     A.   Yes.

1    Q.    Okay. And this was in Boston or
2 Springfield?
3    A.    Springfield.
4    Q.    This is the Springfield office. So
5 you came to Springfield and had a second meeting
6 with Wittrock?
7    A.    Yes.
8    Q.    Was anybody else present at that
9 meeting?
10   A.    I think the other gentleman that
11 came the first time was there.
12   Q.    What was discussed at that second
13 meeting?
14   A.    Just asking me more information
15 about things I knew and their determination of
16 moving forward.
17   Q.    What did they tell you was their
18 determination of moving forward?
19   A.    That they were going to look into
20 things, that they felt they had enough to go
21 forward.
22   Q.    And you have already told me a lot
23 of things that you told them. Can you think of
24 anything else that you told them about, that was

```
 1  you I wrote that up?
 2       Q.      Mm-hmm.
 3       A.      I believe that was in February and
 4  I believe I gave them a copy of that.
 5       Q.      Did you give them other material
 6  after that first meeting?
 7       A.      I had fax'd them other things.
 8  Yes, I had given them more.
 9       Q.      What other types of things?
10       A.      Possibly like things that were
11  given to me at the department, or newspaper
12  articles, just to kind of let them know what was
13  going on in the Town.
14       Q.      Did you continue to provide them
15  with your notes?
16       A.      I don't think so.  I think it was
17  via the telephone mostly, and they drew their
18  own notes on the telephone conversations.  I
19  don't recall any other notes that I gave them.
20       Q.      You had a third meeting with them?
21       A.      Yes.
22       Q.      Where did that take place?
23       A.      The third meeting that I met Bill
24  at was at a Friendly's in Sturbridge.
```

```
 1       Q.      And this was something that you
 2  told the FBI about; is that right?
 3       A.      Yes.
 4       Q.      And the ATF and CPAC, right?
 5       A.      Yes.
 6       Q.      And you don't remember whether he
 7  said anything, while you were recording him,
 8  about that issue?
 9       A.      I don't.  It was a long meeting.
10       Q.      Was anything said about the alleged
11  misuse of funds?
12       A.      That I was alleging him -- could
13  you rephrase that question?
14       Q.      Yes.  During this deposition, you
15  have stated that you told the FBI agent and
16  possibly others that Kevin Gleason was misusing
17  funds, right?
18       A.      Yes.
19       Q.      Was there anything about that in
20  the meeting that you had with Gleason and
21  Morehouse?
22       A.      I don't think so.
23       Q.      Can you think of anything else that
24  was said during that meeting, by anyone?
```

```
 1      A.      No.  He -- let me rephrase that.
 2  Yes.  He told me that he was just going to be
 3  following up and going off into their own
 4  investigation of things.
 5      Q.      Did you hear from him after that
 6  meeting?
 7      A.      Yes.
 8      Q.      Tell me about it.
 9      A.      He told me that he did the
10  transcription.  I told him things were not going
11  well because I really felt like Kevin was
12  setting me up, and he said that, you know, I
13  don't have to worry about doing anything on
14  behalf of them, that they have their own
15  investigation going and I need to take care of
16  myself, if I need to get out of there or if I
17  didn't feel safe or whatever.  Conversations
18  like that.
19      Q.      How many times did you talk to him
20  after that last meeting?
21      A.      Probably dozens.
22      Q.      Dozens?
23      A.      Probably.
24      Q.      So you have been in pretty regular
```

EXHIBIT 2



**U.S. Department of Justice**

*Michael J. Sullivan*
United States Attorney
District of Massachusetts

---

*Main Reception: (413) 785-0235*
*Facsimile:       (413) 785-0394*

*Federal Building and Courthouse*
*1550 Main Street, Room 310*
*Springfield, Massachusetts 01103*

January 12, 2007

Attorney Pat Rapunchik
Robinson, Donovan
P.O. Box 15609
Springfield, MA 01115-5609

    Re: <u>Quinones</u>

Dear Attorney Rapunchik:

    I am in the process of gathering the information requested in your subpoena. Please send me a copy of the privacy act order once it is entered by the court as we will need that before we can release any material.

                                Very truly yours,

                                MICHAEL J. SULLIVAN
                                United States Attorney

                 By: _____
                                KAREN L. GOODWIN
                                Assistant U.S. Attorney



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-30135-KPN

| | |
|---|---|
| STACEY QUINONES,<br>    Plaintiff | )<br>)<br>) |
| vs. | )<br>) |
| TOWN OF HOLLAND, HOLLAND POLICE<br>DEPARTMENT, CHIEF KEVIN GLEASON,<br>RAY MOREHOUSE AND EARL JOHNSON,<br>    Defendants | )<br>)<br>)<br>) |

## ORDER

UPON CONSIDERATION of Defendants' Motion for Entry of Privacy Order and it appearing that the Defendants' need for disclosure of the information sought in their subpoena duces tecum to the Custodian of Records at the Federal Bureau of Investigation outweighs the privacy needs of the persons to whom the information pertains, it is this ____ day of _____, 2007

ORDERED that the Defendants' Motion is granted, and it is

FURTHER ORDERED, that the deponent shall not be precluded from raising any objections other than the Privacy Act (5 U.S.C. §552a), such as privilege, in responding to the subpoena duces tecum.

 

_____
United States District Judge

468909